DAVIS, Judge,
dissenting.
I respectfully dissent. In my opinion, this record fails to include competent, substantial evidence that supports the trial court’s finding that KG.’s conduct was egregious. See I.D. v. Dep’t of Children & Families, 13 So.3d 1117, 1119 (Fla.3d A 2009) (“The standard of review where a trial court terminates parental rights on the basis of egregious conduct ... is whether the order is supported by competent substantial evidence.”). Accordingly, I would reverse and remand for the entry of an order of dependency as to K.G. and require that she be offered a case plan that may lead to reunification.
The trial court’s final judgment terminating K.G.’s rights to the child included the following finding as to K.G.’s egregious conduct:
[Gjrounds for termination in this case were established because ... the Mother has the opportunity and capability to prevent exposure of the child to the egregious conduct of the Father. This conduct has, in the past, proven to threaten the life, safety, physical, mental, and emotional health of the child.... The Mother is found to have knowingly failed to protect the child by refusing to accept the evidence of the child’s injury or to go against the Father in this cause of action.
The record before this court, however, simply does not support this finding. Initially, I note that DCF did not present any evidence below to show that K.G. was on notice prior to this incident that she needed to protect the child from the father. The testimony established that K.G. was not present when the child’s injuries were inflicted. And nothing in this record suggests that prior to the subject incident K.G. was aware of any indication that the child’s father had a propensity to injure the child.[3] As such, the trial court’s finding that K.G. “knowingly failed to protect the child” from the father can only be referring to her continued belief that the father was not responsible for the child’s injuries. Any failure to protect, therefore, is prospective rather than a suggestion that the instant injuries to the child were the result of KG.’s having the “opportunity and capability” to prevent the injuries but failing to do so. See § 39.806(1)(f), Fla. Stat. (2010).[4]
However, just as there is no evidence in the record to suggest that K.G. could have but failed to prevent the instant injuries to the child, I conclude that the evidence does not support the determination that KG.’s *344 accepting the father’s denial of hurting the child rises to the level of egregious conduct. Egregious conduct is defined by statute as conduct that is “deplorable, flagrant, or outrageous by a normal standard of conduct.” § 39.806(1)(f)(2).
Here, K.G.’s decision to believe the child’s father’s claims of innocence must be viewed in light of the fact that, according to this record, the father had never done anything to the child or K.G. that would put K.G. on notice that he was a danger to the child. Instead, we have a factual scenario arising wherein K.G. leaves a fussy three and one-half-month-old infant with the father in the car in the parking lot of a store while she goes in to shop. Upon her return ten minutes later, the child is in distress. At the hospital, the doctors advise K.G. that the infant has been severely shaken and has serious brain injuries. The father denies, that he harmed the child, and K.G. is faced with a horrible dilemma: should she believe the father of her child in his protestations of innocence or should she accept the doctor’s findings that the child has been abused when she knows the father to be the only one with the opportunity to inflict such abuse.
According to the testimony, the child’s injuries caused conflict between K.G. and the father. K.G. went to the store to determine if the store’s surveillance video might provide some answers, but she was unable to obtain a videotape. The videotapes unfortunately were inconclusive. The majority suggests that K.G.’s investigation of the incident evidences egregious conduct on her part because she obviously questioned the father’s innocence yet ultimately determined that she would continue her relationship with him. I, however, would suggest that by questioning the father’s story and attempting to obtain all the information she could about the incident, K.G. exhibited the commitment she had to her child and to discovering the truth about what happened to her. Taken by itself, this investigation fails to establish clear and convincing evidence of egregious conduct.
Then, prior to trial, the father produced three experts who supported his claims of innocence. A radiologist testified that in his opinion, his examination of the child’s brain scan revealed injuries of three different ages, including one that would have been from five to seven days old. An expert in biomechanics testified that in his opinion, these injuries could not have resulted from the severe shaking of the child and that in essence, he questioned the whole area of shaken baby syndrome. Finally, another medical doctor testified that the child’s injuries were a “rebleed” of a preexisting condition. He too questioned the shaken baby syndrome reasoning.
Faced with the claims of innocence from the child’s father, the lack of any indication from the past that the father would commit such an act, and three experts who supported the father’s innocence — two of whom are medical doctors and one who has earned a Ph.D. in a related field — K.G. proceeded to trial accepting as true the father’s declaration of innocence. In doing so, K.G. also accepted the experts’ opinions that the child was not injured by a shaking but that the injury was the result of a preexisting condition. It is this reliance on these three experts that the trial court and the majority find to be egregious conduct on the part of K.G. I must disagree.
In doing so, I do recognize that the trial court did have before it expert testimony that contradicted the father’s experts and that it chose to disregard the father’s experts’ testimony. I also recognize that such a weighing of the evidence is perfectly within the purview of the trial court in making the determination of whether the father’s actions amounted to egregious *345 conduct. However, I reject the conclusion that K.G.’s failure to completely ignore the opinions of the father’s three expert witnesses prior to the trial court’s determination of their value amounts to “deplorable, flagrant, or outrageous” conduct. I would conclude instead that the record fails to provide competent, substantial evidence to support the trial court’s finding of egregious conduct by K.G., and I would reverse the final judgment of termination. I also would note that with the trial court’s determination of the “guilt” of the father and KG.’s potential for choosing to disregard that finding by the trial court, a dependency order may be appropriate with the provision of a case plan for K.G. that would include a requirement that she prevent the father’s further contact with the child.

. Cf. D.O. v. S.M., 981 So.2d 11 (Fla. 4th DCA 2007) (affirming termination as to mother on grounds of egregious conduct where both parents were child’s only caregivers and thus both necessarily were present during the abuse and where even if mother did not herself inflict the abuse, she was aware that father had history of domestic violence and child was displaying manifestations of repeated abuse over a five-week period yet mother did not seek medical attention or remove child from the home).

. This is also the conclusion by the majority opinion: "The trial court had ample evidence to conclude that K.G. will not protect the child from the person who caused the severe injuries.”